UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ABDEL ABDELFATTAH,

      Plaintiff,                                    CASE NO.:

vs.

AIR AMERICA AIR CONDITIONING,
PLUMBING & ELECTRICAL LLC,
a Foreign Limited Liability Company

      Defendant.

_____/

## **COMPLAINT**

COMES NOW the Plaintiff, ABDEL ABDELFATTAH (hereinafter "ABDELFATTAH"), by and through the undersigned Counsel, and sues the Defendant, AIR AMERICA AIR CONDITIONING, PLUMBING & ELECTRICAL LLC, a Foreign Limited Liability Company (hereinafter "AIR AMERICA")  for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Florida Statutes §§ 760.01-760.11 (the "FCRA"). In support thereof, Plaintiff states as follows:

## **JURISDICTION AND VENUE**

1.    This is a civil action with damages that exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2.    This Court is vested with federal question jurisdiction over ABDELFATTAH's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").  This Court has supplemental jurisdiction over ABDELFATTAH's related claims arising under state and local laws, pursuant to 28 U.S.C. § 1367.

3.      Venue lies within the Southern District of Florida, Fort Lauderdale Division, pursuant to 28 U.S.C. §§ 1391(b) and (c), because all actions relevant to ABDELFATTAH's claims arose in this Judicial Circuit.

<u>**ADMINISTRATIVE PREREQUISITES**</u>

4.      All conditions precedent to the maintenance of this action have been met or waived.

5.      ABDELFATTAH timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practices of AIR AMERICA. A copy of said Charge is attached hereto as **Exhibit "A."**

6.      On or about November 17, 2022, the U.S. Equal Opportunity Commission issued a Notice of Right to Sue, following Plaintiff's requesting a right to sue. This Notice of Right to Sue was received by ABDELFATTAH's counsel on January 5, 2023. A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B.";**

7.      This Complaint is being filed within ninety (90) days of receipt of the Notice of Right to Sue.

<u>**PARTIES**</u>

8.      ABDELFATTAH is a resident of Broward County, Florida, over the age of eighteen years, and otherwise *sui juris*.

9.      ABDELFATTAH was and is a member of a protected group under Title VII and the FCRA's prohibitions against race, color, and national origin discrimination and retaliation, namely: ABDELFATTAH is a darker skinned Middle Eastern man of Jordanian descent.

10.      At all times material hereto, AIR AMERICA is and was a Foreign Limited Liability Company that provides air conditioning, electrical, and plumbing services in the

southeast region of Florida. AIR AMERICA is and was authorized, operating, and licensed to do business in the State of Florida. At all times material, AIR AMERICA operated a place of business at 12550 NW 39th St., Coral Springs, FL 33065 and has more than fifteen (15) employees.

11.     At all times material, AIR AMERICA was and is an "employer" within the meaning of Title VII and the FCRA.

12.     ABDELFATTAH was an "employee" of AIR AMERICA and an "aggrieved person" within the meaning of 42 U.S.C. § 2000e(f) and the FCRA § 760.02(10) during the times relevant to this Action.

## GENERAL ALLEGATIONS

13.     ABDELFATTAH began his employment with AIR AMERICA on March 21, 2021 as an air conditioning service technician.

14.     In this role as an air conditioning service technician, ABDELFATTAH regularly worked forty (40) hours per week, with occasional weeks ranging up to sixty (60) hours per week when he is assigned to be on call.

15.     ABDELFATTAH was earning twenty-five dollars ($25.00) per hour in the air conditioning role with AIR AMERICA.

16.     Over the course of his employment, ABDELFATTAH completed all the jobs he was assigned and regularly made sales.

17.     Shortly after beginning his employment with AIR AMERICA, ABDELFATTAH began experiencing race, color, and national origin discrimination in the workplace.

18.     By way of example, ABDELFATTAH was frequently told by colleagues that he has a "weird" name.

19.     ABDELFATTAH subsequently learned that these same colleagues to comment on his "weird name" would search for ABDELFATTAH's name on the internet, seeking to find out his national origin.

20.     After learning of his colleagues' activities, ABDELFATTAH told his colleagues that he is Middle Eastern and was born in Jordan.

21.     Subsequently, ABDELFATTAH's discriminatory treatment in the workplace worsened.

22.     On one occasion, while ABDELFATTAH was opening the door to get into his van, Dominic [last name unknown], a colleague of ABDELFATTAH, intentionally and rapidly accelerated in ABDELFATTAH's direction with his vehicle, almost hitting and running over ABDELFATTAH.

23.     Dominic, upon getting out of his own vehicle, approached ABDELFATTAH and said, "don't make me walk up to you and slap you like the sand nigger you are."

24.     Immediately following this incident, ABDELFATTAH reported Dominic's discriminatory comments and violent behavior to his managers, Scott Manger and Frank [last name unknown].

25.     Upon learning about the incident between Dominic and ABDELFATTAH, Scott Manger and Frank told ABDELFATTAH to 'let it go and walk away'.

26.     ABDELFATTAH also reported the incident to the human resources department, and human resources likewise told ABDELFATTAH to 'let it go'.

27.      Following this incident, the discriminatory behavior toward ABDELFATTAH by his colleagues continued to increase to nearly daily occurrences.

28.     When ABDELFATTAH would call in to dispatch, the colleague responsible for dispatch would mock ABDELFATTAH's accent, and speak to ABDELFATTAH in a derogatory and mocking Middle Eastern accent or Indian accent.

29.     In addition, during these calls, dispatch mocked ABDELFATTAH's name, and refused to address the reason for ABDELFATTAH's call in the first place, leaving him without answers as to jobs or direction as to his next assignment.

30.     Additionally, colleagues often screamed at ABDELFATTAH in the presence of other colleagues and even in the presence of clients through the radio whenever ABDELFATTAH requested work equipment, repairs to his vehicle, or personal protective equipment such as gloves and masks.

31.     ABDELFATTAH was also given the least favorable jobs among the employees, such as crawling into small attic spaces and waiting long hours for inspectors to arrive.

32.     In such instances when ABDELFATTAH was required to wait long hours for inspectors to arrive, ABDELFATTAH was prohibited from leaving the premises to use a restroom at a nearby gas station and instead told by management to keep an empty bottle in his van to urinate in. Upon information and belief, no other AIR AMERICA employees were denied restroom access.

33.     The harassing and discriminatory treatment continued as ABDELFATTAH would be assigned to work on a unit in multi-unit buildings, and only after packing away his extension ladder and other items into his van would dispatch advise ABDELFATTAH that his next assigned unit is in the same building, requiring ABDELFATTAH to expend additional energy and time unloading all of his work from his van again to return inside the same building for the next assignment.

34.     Due to the amount of time it would take for ABDELFATTAH to load and unload the work items necessary for his assignments, AIR AMERICA caused ABDELFATTAH to miss other opportunities to earn commissions.

35.     Overall, ABDELFATTAH was denied sales and commission opportunities on a regular basis while working at AIR AMERICA.

36.     Routinely, clients who ABDELFATTAH referred to AIR AMERICA for business were given to other, non-Middle-Eastern technicians instead of ABDELFATTAH.

37.     In January of 2022, an example of the above instance occurred when a potential client requested a quote from ABDELFATTAH after seeing his company vehicle at a home of a neighbor of the potential client.

38.     ABDELFATTAH told the potential client that he would be happy to assist, but the client would be required to call AIR AMERICA and request that ABDELFATTAH give them a quote, since AIR AMERICA assigns the work appointments to ABDELFATTAH.

39.     After calling AIR AMERICA and requesting a quote specifically from ABDELFATTAH, AIR AMERICA falsely informed the potential client that ABDELFATTAH was not authorized to provide any estimates or quotes, thus taking away another opportunity for ABDELFATTAH to earn commission. This potential client was then assigned to another technician.

40.     ABDELFATTAH reported the various hostile and discriminatory actions described above to the Human Resources Department at AIR AMERICA, but no actions were ever taken to resolve any of the described issues.

41.     Not only did Human Resources not address the issues of ongoing discrimination ABDELFATTAH brought to their attention, but Human Resources responded to

ABDELFATTAH saying, "that's what you get for not getting along" and "nothing good is going to come out of complaining about management."

42.     In or around February 2022, ABDELFATTAH reported to AIR AMERICA that his work vehicle needed repairs that impact his safety when operating the company vehicle.

43.     ABDELFATTAH's report was not addressed and ABDELFATTAH was told by AIR AMERICA to stop complaining.

44.     In response to this incident, AIR AMERICA told ABDELFATTAH that he complained too much and then threatened to take away his van entirely, which would render him unable to do his job.

45.     When Nelson, the service manager at AIR AMERICA, inspected ABDELFATTAH's work vehicle, he made false allegations that ABDELFATTAH was smoking marijuana in the company vehicle.

46.     On February 8, 2022, Frank and Chuck, the manager and general manager at AIR AMERICA, called ABDELFATTAH into a meeting to address Nelson's allegations of smoking in the company vehicle.

47.     Frank and Chuck attempted to have ABDELFATTAH sign a statement claiming he smoked marijuana in his work vehicle, and ABDELFATTAH declined to sign this statement as it was not truthful.

48.     ABDELFATTAH informed his supervisors that he did not smoke marijuana in his vehicle and does not use marijuana at all. Rather ABDELFATTAH was, once again, being targeted and subjected to discriminatory treatment because of his color, race, and national origin.

49.     Frank and Chuck refused to allow ABDELFATTAH to leave the premises unless he either signed the statement admitting to the false allegations or until he submitted a urine sample with a supervisor present.

50.     ABDELFATTAH refused to participate in either of the options that Frank and Chuck offered him as he believed he was being singled out and discriminated against as he was aware that other employees who actually did engage in such conduct that violated company policy were not treated in the same or similar manner.

51.     Thereafter, on February 8, 2022, ABDELFATTAH's employment with AIR AMERICA was terminated.

52.     Any alleged nondiscriminatory reason for this treatment by AIR AMERICA is a mere pretext for the actual reason for discriminating against ABDELFATTAH based on his race, national origin, and color and reports of same.

53.     As a direct and proximate result of AIR AMERICA's actions, ABDELFATTAH has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory damages, and punitive damages according to proof against AIR AMERICA.

54.     ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under Title VII and the FCRA and is required to pay his attorney a reasonable fee for services rendered in this case.

## COUNT I – VIOLATION OF TITLE VII
## RACE AND COLOR DISCRIMINATION

55.     Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

56.     ABDELFATTAH is a member of a protected class due to his race (Middle Eastern) and color (darker skin).

57.     At all times necessary, ABDELFATTAH was qualified to perform his duties as the air conditioning technician.

58.     During the course of ABDELFATTAH's employment with AIR AMERICA, ABDELFATTAH was subjected to a discriminatory, hostile, and offensive work environment because of his race (Middle Eastern) and color, as more fully described in the General Allegations.

59.     The offensive and discriminatory conduct referred to the in General Allegations was offensive to ABDELFATTAH and would be offensive to a reasonable person.

60.     ABDELFATTAH was subjected to the conduct referred to in the General Allegations of this Complaint because he is a darker skinned Middle Eastern man of Jordanian descent.

61.     ABDELFATTAH's supervisors and superiors directed the conduct referred to in this Complaint to ABDELFATTAH.

62.     ABDELFATTAH's termination constituted an adverse employment action against him, which was causally related to ABDELFATTAH's race, national origin, and color.

63.     Similarly situated non-Middle Eastern/non-Jordanian employees were treated more favorably by AIR AMERICA's supervisors and management than ABDELFATTAH. Specifically, the conduct endured by ABDELFATTAH as referred to in the General Allegations of this Complaint was not faced by ABDELFATTAH's non-Middle Eastern counterparts.

64.     As a direct and proximate result of the foregoing, ABDELFATTAH has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

65.     Any alleged nondiscriminatory reason for this treatment by AIR AMERICA is a mere pretext for the actual reason for discriminating against ABDELFATTAH for his race, national origin, and color.

66.     ABDELFATTAH has suffered damages on an on-going and continuous nature.

67.      What is more, the aforementioned actions of AIR AMERICA were willful, wanton, intentional, and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights and the consequences of such actions, such that ABDELFATTAH is entitled to punitive damages.

68.     As a result of the deprivations of rights at the hands of AIR AMERICA, ABDELFATTAH has been forced to hire an attorney and pay him a reasonable fee, which he is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT II – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## RACE AND COLOR DISCRIMINATION

69.     Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

70.     At all times material hereto, AIR AMERICA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

71.     ABDELFATTAH is a member of a protected class due to his race (Middle Eastern) and color.

72.     At all times necessary, ABDELFATTAH was qualified to perform his duties as an air conditioning technician at AIR AMERICA.

73.     During the course of ABDELFATTAH's employment with AIR AMERICA, ABDELFATTAH was subjected to a discriminatory, hostile, and offensive work environment because of his race (Middle Eastern) and color as more fully described in the General Allegations.

74.     The discriminatory conduct referred to the in General Allegations was offensive to ABDELFATTAH and would be offensive to a reasonable person.

75.     ABDELFATTAH was subjected to the conduct referred to in the General Allegations of this Complaint because he is a darker skinned Middle Eastern man of Jordanian descent.

76.     ABDELFATTAH's supervisors and superiors directed the conduct referred to in this Complaint to ABDELFATTAH and also failed to address it.

77.     ABDELFATTAH's termination constituted an adverse employment action against him, which was causally related to ABDELFATTAH's race (Middle Eastern) and color.

78.     Similarly situated non-Middle Eastern employees were treated more favorably by AIR AMERICA's supervisors and management than ABDELFATTAH. Specifically, the conduct endured by ABDELFATTAH as referred to in the General Allegations of this Complaint was not faced by ABDELFATTAH's non-Middle Eastern counterparts.

79.     As a direct and proximate result of the foregoing, ABDELFATTAH has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

80.     Any alleged nondiscriminatory reason for this treatment by AIR AMERICA is a mere pretext for the actual reason for discriminating against ABDELFATTAH for his race and color.

81.     ABDELFATTAH has suffered damages on an on-going and continuous nature.

82.     AIR AMERICA's actions were malicious and were recklessly indifferent to ABDELFATTAH's rights pursuant to Fla. Stat. § 760.10.

83.     The aforementioned actions of AIR AMERICA were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

84.      ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this cause, which he is entitled to recover pursuant to Fla. Stat.§ 760.021 and otherwise by law.

## COUNT III – VIOLATION OF TITLE VII
## NATIONAL ORIGIN DISCRIMINATION

85.     Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

86.     ABDELFATTAH is a member of a protected class due to his national origin, Jordanian.

87.     At all times necessary, ABDELFATTAH was qualified to perform his duties as an air conditioning technician.

88.     During the course of ABDELFATTAH's employment with AIR AMERCA, ABDELFATTAH was subjected to a discriminatory, hostile, and offensive work environment because of his national origin, as more fully described in the General Allegations.

89.     The offensive and discriminatory conduct referred to the in General Allegations was offensive to ABDELFATTAH and would be offensive to a reasonable person.

90.     ABDELFATTAH was subjected to the conduct referred to in the General Allegations of this Complaint because he is Middle Eastern, specifically Jordanian.

91.     ABDELFATTAH's colleagues, supervisors and superiors directed the conduct referred to in this Complaint to ABDELFATTAH.

92.     ABDELFATTAH's termination constituted an adverse employment action against him, which was causally related to ABDELFATTAH's national origin (Jordanian).

93.     Similarly situated non-Jordanian employees were treated more favorably by AIR AMERICA's supervisors and management than ABDELFATTAH. Specifically, the conduct endured by ABDELFATTAH as referred to in the General Allegations of this Complaint was not faced by ABDELFATTAH's non-Jordanian counterparts.

94.     As a direct and proximate result of the foregoing, ABDELFATTAH has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

95.     Any alleged nondiscriminatory reason for this treatment by AIR AMERCA is a mere pretext for the actual reason for discriminating against ABDELFATTAH for his national origin.

96.     ABDELFATTAH has suffered damages on an on-going and continuous nature.

97.     As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

98.     What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

99.     ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under Title VII and is required to pay his attorney a reasonable fee for services rendered in this cause

### COUNT IV – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT NATIONAL ORIGIN DISCRIMINATION

100.    Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

101.    At all times material hereto, AIR AMERICA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

102.    ABDELFATTAH is a member of a protected class due to his national origin (Jordanian).

103.    At all times necessary, ABDELFATTAH was qualified to perform his duties as an air conditioning technician.

104.    During the course of ABDELFATTAH's employment with AIR AMERICA, ABDELFATTAH was subjected to a discriminatory, hostile, and offensive work environment because of his national origin (Jordanian), as more fully described in the General Allegations.

105.    The offensive and discriminatory conduct referred to the in General Allegations was offensive to ABDELFATTAH and would be offensive to a reasonable person.

106.    ABDELFATTAH was subjected to the conduct referred to in the General Allegations of this Complaint because he is Jordanian.

14

107.    ABDELFATTAH's supervisors and superiors directed the conduct referred to in this Complaint to ABDELFATTAH.

108.    ABDELFATTAH's termination constituted an adverse employment action against him, which was causally related to ABDELFATTAH's national origin (Jordanian).

109.    Similarly situated non-Jordanian employees were treated more favorably by AIR AMERICA's supervisors and management than ABDELFATTAH. Specifically, the conduct endured by ABDELFATTAH as referred to in the General Allegations of this Complaint was not faced by ABDELFATTAH's non-Jordanian counterparts.

110.    As a direct and proximate result of the foregoing, ABDELFATTAH has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

111.    Any alleged nondiscriminatory reason for this treatment by AIR AMERICA is a mere pretext for the actual reason for discriminating against ABDELFATTAH for his national origin (Jordanian).

112.    ABDELFATTAH has suffered damages on an on-going and continuous nature.

113.    AIR AMERICA's actions were malicious and were recklessly indifferent to ABDELFATTAH's rights pursuant to Fla. Stat. § 760.10.

114.     The aforementioned actions of AIR AMERICA were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

115.    As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

116.    What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

117.    ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this cause

### COUNT V – RETALIATION IN
### VIOLATION OF TITLE VII

118.    Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

119.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3 et seq.

120.    ABDELFATTAH is a member of a protected class due to his race (Middle Eastern), national origin (Jordanian) and color, who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

121.    ABDELFATTAH engaged in a statutorily protected expression, namely he made complaints against his colleagues and management of AIR AMERICA, including, without limitation against Chuck [last name unknown], Scott Manger, and Frank [last name unknown], for harassing him and subjecting him to discriminatory treatment, resulting in a hostile work environment.

16

122.    ABDELFATTAH additionally reported his colleagues to Human Resources for their discriminatory treatment including almost hitting him with a vehicle, calling him crude and racist names such as "sand nigger", mocking his name and accent by speaking to him in an exaggerated Middle Eastern or Indian accent over dispatch, etc.

123.    AIR AMERICA management took no further or definitive action to resolve the harassment and discrimination taking place in the workplace, instead allowing it to continue until ABDELFATTAH was wrongfully terminated after being targeted and retaliated against in the workplace.

124.    A causal connection exists between the complaints to Human Resources and management of AIR AMERICA made by ABDELFATTAH with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment faced by ABDELFATTAH, namely his termination.

125.    AIR AMERICA disciplined ABDELFATTAH for pretextual reasons and ultimately terminated him as a result of his complaints of harassment and discrimination due to his race, national origin, and color.

126.    As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

127.    What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

128.    ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under Title VII and is required to pay his attorney a reasonable fee for services rendered in this cause.

## COUNT VI - RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT OF 1992

129.    Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

130.    The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

131.    AIR AMERICA is an "employer" as defined by § 760.09(7) of the Florida Statutes.

132.    ABDELFATTAH is a member of a protected class due to his race and national origin, both being Middle Eastern and Jordanian, who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

133.    ABDELFATTAH engaged in a statutorily protected expression, namely he made complaints against the management of AIR AMERICA, including Chuck [last name unknown], Dominic [last name unknown], Scott Manger, and Frank [last name unknown], for harassing him and subjecting him to discriminatory treatment.

134.    ABDELFATTAH additionally reported his colleagues to Human Resources for their discriminatory treatment including almost hitting him with a vehicle, calling him crude and racist names such as "sand nigger", mocking his name and accent by speaking to him in an exaggerated Middle Eastern or Indian accent over dispatch, etc.

135.    AIR AMERICA management took no definitive action to resolve the harassment and discrimination taking place in the workplace, instead allowing it to continue until ABDELFATTAH was wrongfully terminated.

136.    A causal connection exists between the complaints to Human Resources and management of AIR AMERICA made by ABDELFATTAH with regard to the discriminatory treatment (i.e. a statutorily protected expression) and the adverse employment faced by ABDELFATTAH, namely his termination.

137.    AIR AMERICA disciplined ABDELFATTAH for pretextual reasons and ultimately terminated him as a result of his complaints of harassment and discrimination due to his race, national origin, and color.

138.    As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

139.    What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

140.    ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this cause.

## COUNT VII – HOSTILE WORK ENVIRONMENT IN
## VIOLATION OF TITLE VII

141.    Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

142.    Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

143.    The phrase "terms, conditions, or privileges of employment" as included in 42 U.S.C. § 2000e et seq. evidences a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

144.    A hostile work environment exists, in violation of 42 U.S.C. Sect. 2000(e), et seq., when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

145.    ABDELFATTAH is a darker skinned Middle Eastern man of Jordanian descent and guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

146.    ABDELFATTAH, at all times relevant herein, was qualified for his position as an air conditioning technician within AIR AMERICA.

20

147. During the course and scope of his employment with AIR AMERICA, ABDELFATTAH was subjected to unwelcomed harassment and discriminatory treatment because of his race, national origin, and color. Despite being a hardworking employee who brought in client referrals, AIR AMERICA and its management actively mistreated ABDELFATTAH, treating ABDELFATTAH differently compared to similarly situated non-Middle Eastern employees and ultimately denying ABDELFATTAH opportunities for commission before terminating his employment under pretext.

148. As described fully in the General Allegations, ABDELFATTAH was subjected to repeated discriminatory comments about his skin color and his accent. ABDELFATTAH was further denied the same opportunities to earn commission as other similarly situated employees and targeted through dispatches efforts to create extra work for ABDELFATTAH and deny him lucrative jobs.

149. AIR AMERICA's Human Resources received reports of these incidents and the hostile work environment they created directly from ABDELFATTAH himself.

150. At that time, AIR AMERICA was alerted to the ongoing derogatory treatment ABDELFATTAH was experiencing on a daily basis from both his colleagues and direct supervisors.

151. Notwithstanding ABDELFATTAH's complaint, AIR AMERICA took no further action at that time to resolve the discriminatory treatment against ABDELFATTAH. Instead, AIR AMERICA allowed the discriminatory treatment to continue until ABDELFATTAH's termination.

152. The discrimination experienced by ABDELFATTAH was sufficiently severe and pervasive to create a discriminatorily abusive working environment.

153.   ABDELFATTAH, who was the victim of race, national origin, and color-based discrimination, harassment, and retaliation was subsequently terminated from his employment with AIR AMERICA.

154.   AIR AMERICA's unlawful employment practices complained of above, deprived ABDELFATTAH of his statutory rights under Title VII.

155.   AIR AMERICA and its employees/agents discriminated against ABDELFATTAH with respect to his employment by subjecting ABDELFATTAH to continued discriminatory treatment and a hostile work environment.

156.   AIR AMERICA's actions are in violation of Title VII because AIR AMERICA discriminated against ABDELFATTAH and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of ABDELFATTAH's employment and thereby damaged him.

157.   As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

158.   What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

159.   ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under the Title VII and is required to pay his attorney a reasonable fee for services rendered in this cause of action.

## COUNT VIII – HOSTILE WORK ENVIRONMENT IN
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992

160.     Plaintiff ABDELFATTAH realleges and incorporates by reference the allegations in paragraphs 1 through 54 above as if fully set forth herein.

161.     A hostile work environment claim arising from the FCRA is analyzed under the same laws applicable to Title VII claims.

162.     A hostile work environment exists, in violation of Fla. Stat. Chapter 760.10(1)(a), when (1) an employee belongs to a protected group, (2) the employee has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability.

163.     ABDELFATTAH is of Middle Eastern descent and guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

164.     ABDELFATTAH, at all times relevant herein, was qualified for his position as an air conditioning technician with AIR AMERICA.

165.     During the course and scope of his employment with AIR AMERICA, ABDELFATTAH was subjected to unwelcomed harassment and discriminatory treatment because of his race, national origin, and color. Despite being a hardworking employee who brought in client referrals, AIR AMERICA and its management actively mistreated ABDELFATTAH, treating ABDELFATTAH differently compared to similarly situated non-Middle Eastern employees and ultimately denying ABDELFATTAH opportunities for commission before terminating his employment under pretext.

166.     As described fully in the General Allegations, ABDELFATTAH was subjected to repeated discriminatory comments about his skin color and his accent. ABDELFATTAH was further denied the same opportunities to earn commission as other similarly situated employees and targeted through dispatches efforts to create extra work for ABDELFATTAH and deny him lucrative jobs.

167.     AIR AMERICA's Human Resources received reports of these incidents and the hostile work environment they created directly from ABDELFATTAH himself.

168.     At that time, AIR AMERICA was alerted to the ongoing derogatory treatment ABDELFATTAH was experiencing on a daily basis from both his colleagues and direct supervisors.

169.     Notwithstanding ABDELFATTAH's complaint, AIR AMERICA took no further action at that time to resolve the discriminatory treatment against ABDELFATTAH. Instead, AIR AMERICA allowed the discriminatory treatment to continue until ABDELFATTAH's termination.

170.     The discrimination experienced by ABDELFATTAH was sufficiently severe and pervasive to create a discriminatorily abusive working environment.

171.     ABDELFATTAH, who was the victim of race, national origin, and color-based discrimination, harassment, and retaliation was subsequently terminated from his employment with AIR AMERICA.

172.     AIR AMERICA's unlawful employment practices complained of above, deprived ABDELFATTAH of his statutory rights under FCRA.

173.     AIR AMERICA and its employees/agents discriminated against ABDELFATTAH with respect to his employment by subjecting ABDELFATTAH to continued discriminatory treatment and a hostile work environment.

174.     AIR AMERICA's actions are in violation of FCRA because AIR AMERICA discriminated against ABDELFATTAH and created a hostile work environment, resulting in a loss of compensation, terms and conditions and/or privileges of ABDELFATTAH's employment and thereby damaged him.

175.     As a direct and proximate result of AIR AMERICA's conduct and its employees' actions, ABDELFATTAH has suffered irreparable harm through his loss of gainful employment and through the loss of valuable employment benefits, including insurance benefits which he would have continued to receive had he not been unlawfully terminated.

176.     What is more, the unlawful employment practices complained of above committed by AIR AMERICA were willful, wanton, intentional and with malice or with reckless indifference to ABDELFATTAH's statutorily protected rights, such that ABDELFATTAH is entitled to punitive damages.

177.     ABDELFATTAH has been required to retain the legal services of the undersigned Counsel to enforce his rights under the FCRA and is required to pay his attorney a reasonable fee for services rendered in this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ABDEL ABDELFATTAH, demands judgment against Defendant, AIR AMERICA AIR CONDITIONING, PLUMBING & ELECTRICAL LLC, and requests the following relief:

1. Enter judgment in favor of ABDELFATTAH for AIR AMERICA's violations of Title VII and the FCRA.

2. Award ABDELFATTAH actual damages suffered;

3. Award back pay and value of lost employment benefits to ABDELFATTAH;

4. Award front pay to ABDELFATTAH for the years he would have worked absent AIR AMERICA's discriminatory treatment;

5. Enter judgment in favor of ABDELFATTAH for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress ABDELFATTAH has suffered and continues to suffer;

6. Award ABDELFATTAH punitive damages;

7. Award to ABDELFATTAH all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9. An injunction permanently enjoining AIR AMERICA, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of religion; and

10. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## <u>JURY TRIAL DEMAND</u>

Plaintiff, ABDEL ABDELFATTAH, demands a trial by jury on all issues so triable.

Dated February 15, 2023.

Respectfully submitted,

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **<u>/s/ Gregory S. Sconzo</u>**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQ.
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com